UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARAH A. H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C24-5493-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1977, has a limited education, and has worked as a housekeeper. AR 95-96. She last worked as a housekeeper in or around 2010 to 2014, and last performed some other self-employment in 2020. *See* AR 96, 333, 358-59.

On November 4, 2019, Plaintiff protectively applied for benefits, alleging disability as of June 1, 2015. AR 313-26. Plaintiff's applications were denied initially and on reconsideration,

AR 118-19, 153-54, and Plaintiff requested a hearing. The ALJ conducted a hearing on May 25, 2023, AR 85-117, and, on July 6, 2023, issued a decision finding Plaintiff not disabled, AR 55-69.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since June 1, 2015.

**Step two**: Plaintiff has the following severe impairments: degenerative disc disease; peripheral neuropathy and osteoarthritis of the bilateral hands and arms; asthma/COPD; major depressive disorder; generalized anxiety disorder and panic disorder; and polysubstance abuse (in reported remission).

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**: Plaintiff can perform light work, and is further limited to lift/carry and push/pull twenty pounds occasionally and ten pounds frequently; sit six hours and stand and/or walk six hours in eight-hour workday; frequent bilateral handling, fingering, and overhead reaching with left upper extremity; never climb ladders, ropes, and scaffolds or crawl, and occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never work at unprotected heights, with exposed moving mechanical parts, and avoid concentrated exposure to humidity, vibration, extreme cold, dust, odors, fumes, and pulmonary irritants; can understand, follow, and carry out simple and detailed, but not complex instructions, and do routine and repetitive tasks; cannot perform work requiring specific production rate, such as assembly line or work requiring hourly quotas, but can meet general production demands; can interact with supervisors to receive instructions and redirection; can have interactions with co-workers and occasional interaction with the public that does not involve persuading, negotiating, or instructing; and can work in a stable environment where place and process remain generally the same at least two-thirds of the time.

**Step four**: Plaintiff can perform past relevant work as a housekeeping cleaner.

**Step five**: Plaintiff can also perform other jobs that exist in significant numbers in the national economy, and is therefore not disabled.

AR 55-69.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 2.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

///

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

# DISCUSSION

Plaintiff argues the ALJ erred by failing to properly evaluate medical opinions, her testimony, lay testimony, and the RFC, and further erred at steps four and five. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

## A. The ALJ Erred in Assessing Medical Opinions

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The "supportability" factor addresses the relevance of the objective evidence presented in support of an opinion, as well as the "supporting explanations" provided by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The "consistency" factor examines the consistency of the opinion with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent an opinion is with that other evidence, the more persuasive it will be. *Id*. An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff argues the ALJ erred in evaluating the opinions of William R. Wilkinson, Ed.D., Luci Carstens, Ph.D., Peter Weiss, Ph.D., and Cary Jasper, ARNP, other medical evidence of record, and the prior administrative medical findings of Norman Staley, M.D., Gary Nelson, Ph.D., and Michael Brown, Ph.D. The Court addresses these arguments in turn.

### 1. *Dr. William Wilkinson and Dr. Luci Carstens*

Dr. Wilkinson examined Plaintiff in September 2019. AR 492-500. He diagnosed major depressive disorder, recurrent, marked, generalized anxiety disorder, panic disorder, and alcohol,

methamphetamine, and opioid use disorders, in sustained full remission by report. AR 494. In addition to various mild and moderate functional limitations, he assessed marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual, maintaining appropriate behavior in a work setting, and completing a normal work day and week, and an overall severity rating of marked. AR 494. He assessed a nine-to-twelve month duration of impairment, and found vocational training or services would minimize or eliminate barriers to employment, noting Plaintiff had no recent work experience, a felon history, no current marketable work skills, was still in "recovery focus," and "might have some learning challenges, via [mental status exam (MSE)] memory and concentration tasks." AR 495. He included, as one of several treatment recommendations, "return to work attempts by the next 9-12 months, PT to FT okay (however, she might decide to apply for social security)." *Id.*

In October 2019, Dr. Carstens reviewed and concurred with Dr. Wilkinson's diagnoses and assessment of functional limitations, finding them consistent with the clinical observations and findings. AR 1175-79. However, Dr. Carstens found a twenty-four month duration of impairment supported by the severity of the ratings, the clinical observations, and their negative impact on Plaintiff's ability to be gainfully employed. AR 1175-76.

The ALJ found no "direct rationale" was provided for the assessed limitations. AR 65. She also found that, while the moderate limitations were consistent with other opinions in the record, the marked limitations "appear to be based on the claimant's tendency not to awaken before noon, at which time she travels for methadone maintenance treatment." AR 65-66. She added: "Indeed, her regular receipt of methadone dosages at her clinic rather support her ability to attend to appointments. Overall, the effects of the claimant's fatigue (consistent with methadone therapy) appear to have been overweighted in light of the claimant's demonstrated

abilities to adhere to a regular schedule." AR 66.  She found the assessed marked limitations thus less persuasive than the opinions of other sources finding only moderate limitations.  *Id*.

Dr. Wilkinson's evaluation does include evidence of fatigue and an ability to adhere to a schedule.  It includes, for example, descriptions of Plaintiff's tired appearance, and her report she "barely manages to get up by noon" and "sleeps much of the day", goes to appointments during the day if she has them, goes to a substance use disorder group and then an AA/NA meeting in the evening, is then "quite tired, but often finding it hard to sleep", and is in bed by 11:00-11:30 p.m. AR 493, 495.  As reflected in the ALJ's reasoning, at least two of the three assessed marked limitations relate to maintaining a schedule.  *See* AR 494.  There is, as well, inconsistency between the marked limitations and the only moderate limitations assessed by Drs. Weiss, Nelson, and Brown.  *See* AR 65-66.

However, it is not clear Drs. Wilkinson and Carstens based their assessment of marked limitations on Plaintiff's fatigue, rather than the clinical observations and findings.  Dr. Wilkinson described Plaintiff's appearance as depressive, sad-faced, and tired, and noted her depressed mood, affect congruent with mood, and poor and/or below normal recent and immediate memory and concentration, as demonstrated by her inability to recall any of three objects after fifteen minutes, only partial ability to recall digits backwards, significant difficulty reverse spelling "world", and inability to subtract serial sevens or threes.  AR 495-96.  He additionally, and as noted above, posited that Plaintiff might "have some learning challenges, via MSE memory and concentration tasks." AR 495.  Moreover, while Dr. Wilkinson did not provide a supporting explanation for his assessment of limitations, Dr. Carstens explained that she concurred with the assessment as "supported by the clinical evidence noted in the evaluator's

report." AR 1175.  These facts call into question the substantial evidence support for the ALJ's conclusion.[3]

The Court must also consider the fact that Dr. Wilkinson again assessed Plaintiff in September 2023, some three months after the ALJ's decision.  AR 39-43.  On this occasion, Dr. Wilkinson adjusted the major depressive disorder diagnosis to severe and the substance use disorders to severe when manifest, now in sustained full remission, and added a diagnosis of unspecified personality disorder (features of ACOA, cluster C).  AR 41.  He found severe functional limitations in the areas previously assessed as marked, assessed marked limitations in learning new tasks, adapting to changes in a routine work setting, and communicating and performing effectively in a work setting, and included an overall severity rating of severe.  *Id*.  Dr. Wilkinson also stated:  "[S]he manifests some behavior similar to using something like Fentanyl, but does not admit to such, and frankly does not appear to be resourceful enough at this point to be participating in such.  She is quite depressed, psychomotor slow in speech and thought."  *Id*.  He assessed a twelve-month duration of impairment, and did not recommend vocational training, noting Plaintiff was applying for disability benefits.  AR 42.  The Appeals Council considered this and other evidence submitted, but found it did not affect the ALJ's decision.  AR 2.

Where, as here, the Appeals Council considers new evidence in "deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  The

---

[3] On the other hand, contrary to Plaintiff's contention and as discussed below, the ALJ's consideration of the assessed moderate limitations has the support of substantial evidence.  *See supra* at 10-11.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

1   Court must, in other words, determine whether the ALJ's finding of nondisability remains
2   supported by substantial evidence with review of the entire record, including the new evidence
3   submitted to the Appeals Council.  *Gardner v. Berryhill*, 856 F.3d 652, 656 (9th Cir. 2017).
4         In the 2023 evaluation, the MSE findings included, *inter alia*, appearance observations of
5   "psychomotor slow in manner and in speech, had some difficulty at times remembering things";
6   speech that was slow in responses and thought; mood described as, "[s]he just stated 'blah,' but
7   cried sharing this; she appeared very tired."; flat-to-down affect; remote memory "mixed as to
8   variably okay and poor," but in general within normal limits, and recent and immediate memory
9   below normal limits, as demonstrated by recall of 1/3 objects at fifteen minutes and only partial
10  recall of digits backwards; concentration below normal limits, as demonstrated by the inability to
11  spell "world" backwards, and "[a]t subtracting serial 3's from 50, she managed one attempt, 47,
12  then cried, tried one other attempt, 44, then stopped, stated that she 'didn't know,' and would not
13  try anymore."; and judgment not within normal limits.  AR 42-43.  The evaluation also notes
14  Plaintiff's report that she had been homeless since November 2022, and her daily activities as
15  including being "up before the sun," not doing much of anything other than watching some
16  videos on her phone, maybe eating once a day, trying not to interact with anybody, managing to
17  keep up her personal care via her sister, ability to cook, shop, and do housework but limited
18  physically, and that she did not belong to any groups, but was still occasionally in contact with
19  her sponsor.  AR 39-40.
20        The Commissioner notes that both this evidence and other evidence submitted to the
21  Appeals Council describe decreased psychomotor behavior and speech.  *See* AR 33-34
22  (November 3, 2023 treatment note describing decreased psychomotor, tearful behavior and
23  speech that lacked spontaneity and was slurred).  The Commissioner asserts inconsistency with

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

evidence from the period addressed in the ALJ's decision, and in which Plaintiff consistently demonstrated normal speech and behavior, *see* AR 489, 548, 552, 568, 617, 779, 783, 826, 967, 971, 1005, as well as continued inconsistency with the evidence from Drs. Weiss, Nelson, and Brown.  The Commissioner argues Plaintiff therefore fails to demonstrate this post-decision evidence undermines the substantial evidence support for the ALJ's decision.

The fact that this evidence post-dates the ALJ's decision reduces its relevance.  *See, e.g.*, *Johnson v. Berryhill*, 708 F. App'x 345, 346 (9th Cir. 2017) (unpublished) (substantial evidence supported ALJ's determination where new evidence presented to Appeals Council "post-dates the ALJ's decision and is not relevant because it does not 'relate to the period on or before the ALJ's decision.'") (citing *Brewes*, 682 F.3d at 1162).  Also, while there are consistencies between the observations and findings in the 2019 and 2023 examinations, there are also significant differences.  These differences could reflect changes not relevant to the time period assessed by the ALJ.  The Court nonetheless finds that this evidence further undermines the substantial evidence support for the ALJ's assessment of the opinion evidence from Drs. Wilkinson and Carstens.  The ALJ should, as such, consider all of the evidence from these medical sources on remand.

        2.    *Dr. Peter Weiss*

Dr. Weiss conducted a psychological examination of Plaintiff in October 2021.  AR 970-74.  He diagnosed major depressive disorder, recurrent, moderate, with anxious distress, and found she appeared to be experiencing significant impairment.  AR 973.  He stated Plaintiff could reason, had adequate or better performance in nearly all areas on the cognitive portion of the MSE, would be able to understand and carry out both simple and complex instructions and tasks, and exhibited mild to moderate impairment with short-term memory, which "is probably a

function of her depression." *Id*. Her socialization skills appeared moderately impaired, based on her self-report and behavior in the interview, and her sustained concentration and persistence also appeared moderately impaired, based on her self-report, behavior in evaluation, and MSE performance. *Id*. Finally, Dr. Weiss found an overall moderate level of impairment, and recommended Plaintiff resume outpatient treatment, but stated that her symptoms appeared chronic and would likely appear even with treatment, leaving her prognosis guarded. *Id*.

The ALJ found Dr. Weiss's opinion of moderate limitations persuasive. AR 65. Plaintiff argues that, as with the moderate limitations assessed by Drs. Wilkinson and Carstens, the ALJ erred by failing to include those limitations in the RFC. However, the ALJ may incorporate a physician's opinions in the RFC by assessing limitations consistent with, but not identical to limitations assessed by the physician. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Indeed, the ALJ bears the final responsibility for deciding an individual's RFC, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c), and that responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r*, *SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Plaintiff does not here demonstrate how the assessed RFC failed to account for Dr. Weiss's opinion. In fact, the ALJ found Plaintiff more limited in including a limitation to simple and detailed, but not complex instructions, and accounted for memory, concentration, and socialization impairments by finding Plaintiff could perform routine and repetitive tasks, could not perform work requiring a specific production rate, could work in a stable environment with place and process remaining generally the same at least two-thirds of the time, and could interact with supervisors to receive instructions and redirection, and have

occasional interaction with the public that does not involve persuading, negotiating, or instructing. AR 60. Plaintiff therefore fails to demonstrate error.

### 3. *Cary Jasper, ARNP*

ARNP Jasper examined Plaintiff in November 2021. AR 977-82. Jasper diagnosed asthma, COPD, a "hand issue" that appeared to be related to "some combination of degenerative joint disease and possible trigger thumb", degenerative disc disease of the low back, and "some marked decreased range of motion of her right hip." AR 981. In addition to environmental and postural limitations accounted for in the RFC, Jasper opined Plaintiff was limited to standing/walking at least four hours due to decreased range of motion of low back and inability to squat, and to lifting less than ten pounds occasionally and frequently due to arm weakness and undiagnosed hand issues, "which did manifest with weakness of grip strength on the left hand[,]" and to occasionally reaching, handling, fingering, and feeling due to the condition of her hand and weakness of her arms. *Id*.

The ALJ found this opinion overall unpersuasive. AR 64. She found it unsupported by Jasper's own examination, which was normal except for 4/5 grip strength in the left and 4/5 motor strength in the bilateral upper extremities, and showed Plaintiff's ability to pick up a coin with each hand and resist the examiner's attempt to take it, although with weak resistance on the left, ability to make a fist bilaterally, and normal gait and straight leg raising. *Id*. She found an absence of support in the diagnostic imaging, which showed minimal early osteoarthritis of the left thumb and stable mild degenerative changes of the thoracic spine, and further stated that "problems squatting are not pertinent to an ability to stand/walk." *Id*. (citing AR 983-84, 1225). The ALJ also found the assessment not consistent with other evidence of record and, in particular, April 2023 treatment, wherein Plaintiff exhibited spasms and tenderness in the lumbar

spine and a positive straight leg raise test on the left, but had full 5/5 strength bilaterally, was able to ambulate without assistance, and the pain was deemed acute and not secondary to any cauda equina syndrome or spinal cord impingement, and was treated with over-the-counter pain relievers, lidocaine patches, a muscle relaxer, and a short course of prednisone. AR 63-64 (citing AR 1306-08).

As Plaintiff observes, in noting exceptions to the otherwise "normal" physical examination, the ALJ acknowledged and distinguished the finding of an inability to squat, but failed to directly address or account for Jasper's findings of limited range of motion in Plaintiff's back and right hip. *See* AR 980 (finding back limited to 65 degrees flexion and 10 degrees extension, and right hip limited to 75 degrees with 20 degrees of abduction). Because Jasper opined that Plaintiff's degenerative disc disease of the low back "does present some limitations to her functionality[,]" and that the "examination also revealed some marked decreased range of motion of her right hip[,]" these omissions undermine the substantial evidence support for the ALJ's conclusion. AR 981. They also, given the presence of back spasms and tenderness and a positive left straight leg raise test in April 2023, undermine the ALJ's finding of inconsistency with other record evidence. *See* AR 1306. *See also* AR 566 (April 2017 finding of "bilateral paraspinal muscle tenderness in the lower thoracic region"). The ALJ should therefore reassess the evidence from Jasper with consideration of all of the findings on examination and associated opinions. This reassessment should also, as discussed further below, include consideration of Jasper's opinion relating to lifting, reaching, handling, fingering, and feeling.

    4.    *Other Medical Evidence*

Plaintiff describes other medical evidence of record and asserts that it supports her testimony and medical opinion evidence rejected by the ALJ. Dkt. 13 at 8-9. However, these

medical records do not constitute medical opinions, *see* 20 C.F.R. §§ 404.1513, 416.913, and the mere recitation of this evidence does not set forth a specific assignment of error or basis for overturning the ALJ's decision, *see, e.g., Putz v. Kijakazi*, C21-35733, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) ("Putz also lists numerous clinical findings, unaccompanied by argument, intended to corroborate testimony the ALJ discounted; any argument based on these findings is waived as well."); *Turner*, 613 F.3d at 1223 (ALJ not required to provide reasons to reject statement from a doctor that does not assess any limitations).

        5.    *Norman Staley, M.D.*

In December 2021, State agency medical consultant Dr. Staley assessed Plaintiff as limited to light exertional level work (i.e., lifting/carrying twenty pounds occasionally and ten pounds frequently; sitting and standing/walking six hours; and pushing/pulling up to lifting/carrying limits), with various postural and environmental limitations. AR 163-64. Dr. Staley also pointed to Plaintiff's osteoarthritis of the left thumb, with "reduced grip . . . 4/5", assessed Plaintiff as limited to occasional overhead reaching with the left upper extremity, with assistance of the right upper extremity to ensure "items she is reaching for do not fall", and found her capable of occasional gross and fine manipulation with the left upper extremity. AR 164.

The ALJ found Dr. Staley's opinion "broadly persuasive", and specifically persuasive in relation to all but the assessed limitations on overhead reaching, handling, and fingering. AR 65. The ALJ stated that, while the record shows evidence of contracture, "it equally shows that the claimant remains capable of making a fist with full grip strength." AR 65 (citing AR 542-44, 894, 1005). She found limitation appropriate, but to a frequent, rather than occasional level. *Id*.

The ALJ, in effect, found Dr. Staley's opinion as to the degree of limitation in Plaintiff's left upper extremity not supported by and/or inconsistent with the evidence of record. However,

the only other medical opinion evidence of record addressing Plaintiff's upper extremities, from ARNP Jasper, similarly assessed Plaintiff as limited to occasional reaching, handing, fingering, and feeling due to her reduced grip strength in the left and reduced motor strength in the bilateral upper extremities. *See* AR 981. In addition, and as Plaintiff observes, the evidence cited by the ALJ in support of her conclusion includes not only evidence of contracture, but also an occupational therapist's finding of mildly impaired sensation, as well as Plaintiff's report of difficulty with fine prehension tasks, writing, jar opening, and doing her hair. AR 542. The Court, considering the evidence as a whole, finds an absence of substantial evidence support for the ALJ's rejection of Dr. Staley's opinion on Plaintiff's manipulative limitations, necessitating further consideration of this opinion on remand.

      6.    *Gary Nelson, Ph.D., and Michael Brown, Ph.D.*

State agency psychological consultants Drs. Nelson and Brown offered opinions on Plaintiff's functioning that the ALJ found well-supported by the psychological findings they noted and the examination of Dr. Weiss. AR 65. Plaintiff asserts that their findings are inconsistent with the opinions of Dr. Wilkinson, and "are therefore somewhat lacking in supportability and consistency." Dkt. 13 at 10. In so doing, Plaintiff fails to identify a specific assignment of error in the ALJ's assessment of this opinion evidence. The Court, accordingly, finds no error established. However, the ALJ should nonetheless reconsider this opinion evidence as may be needed on remand.

**B.**    **The ALJ Did Not Harmfully Err in Assessing Plaintiff's Testimony**

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to discount a Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The ALJ here offered several clear and convincing reasons for discounting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, *see* AR 57-58, 61-62, 66, including, for example, evidence of work activity after the alleged onset date,[4] *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ "may consider any work activity, including part-time work, in determining whether a claimant is disabled"), evidence of exaggeration of her reported degree of limitation, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may consider tendency to exaggerate in assessing symptom testimony), and evidence of effective, conservative treatment, *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

However, because this matter is subject to remand for further consideration of the medical opinion evidence, the ALJ should also reassess the subjective symptom testimony as needed. This reconsideration should include, but not be limited to, the ALJ's finding of inconsistency with the medical and other evidence of record, an absence of support for Plaintiff's allegations relating to her hand impairment, and his consideration of the fact that efforts at mental health therapy apart from substance abuse treatment have been short-lived and resulted in discharge due to attendance within months of intake evaluations. AR 66. *See also supra* at 17 (discussing ALJ's consideration of evidence associated with following instructions).

---

[4] The ALJ included this finding at step one, but proceeded to step two upon finding it was "not possible to ascertain with any degree of certainty the nature of this work activity (if it took place at all)[.]" AR 57-58 (pointing to self-employment income of $7,617 in 2017 and $10,527 in 2020, her description of 2020 work as helping people put up and take down Christmas decorations, and her report of selling some furniture from storage, but that she could not really remember what her self-employment work activity was; stating the 2020 amount would constitute substantial gainful activity as seasonal work, that realizing taxable gains from casual sales of used furniture was not typical, and that the employment extended the date last insured; finding her testimony on this issue evasive, self-serving, and unpersuasive, and noting her failure to provide a reason why this self-employment could not continue) (citations omitted).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 15

|   |   |
|---|---|
| 1 | **C.     The ALJ Did Not Harmfully Err in Assessing Lay Testimony** |

The record also contains a function report completed by Plaintiff's daughter in February 2020. AR 370-77. The ALJ stated that the report made similar allegations to the report Plaintiff completed in 2021, AR 62, which the ALJ found, overall, "somewhat exaggerated (lifting no more than one pound, portraying reading instructions step-by-step as anomalous), and the claimant wanted to emphasize functional limitations, but could not identify any significant area of limitation." AR 61-62 (citing AR 397-406).

Plaintiff argues that, contrary to the ALJ's inference, her daughter's observations are not identical to her testimony, that the ALJ failed to give any convincing reason to reject her testimony, and that the consistency is a valid reason to give more, not less weight to the lay and subjective symptom testimony. Plaintiff also disputes the Commissioner's contention that the ALJ is no longer required to articulate any reason for rejecting lay testimony. *See* Dkts. 19-20.

The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons for rejecting lay testimony under the regulations applicable to this case. *See, e.g.*, *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, *2, 3-6 (9th Cir. May 13, 2025) (finding no need to decide issue because any error in failure to provide germane reason for rejecting lay testimony was harmless; containing concurring opinions taking opposing positions as to the new regulations and the germane reason standard); *Crummett v. King*, No. 23-3668, 2025 U.S. App. LEXIS 3235, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025). Without that clarification, this Court continues to find no basis for the Commissioner's assertion that an ALJ need not articulate why the ALJ rejected relevant lay witness evidence. *See, e.g., Mark C. J. v. Comm'r of Soc. Sec.,* C24-5252-DWC, 2024 WL 4182576, at *4 (W.D. Wash. Sept. 13, 2024). *Accord Connelly v. Colvin*, No. 23-35527, 2024 WL 5040994, at *2 (9th Cir. Dec. 9, 2024). *See also Vincent ex rel. Vincent v.*

*Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may not reject "significant probative evidence" without explanation).

It also remains true that, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless. *Molina*, 674 F.3d at 1117-22. In this case, the ALJ accurately observed the similarity between the lay testimony and Plaintiff's testimony, and provided sufficient reasons for rejecting Plaintiff's testimony. However, because this matter is subject to remand, the ALJ should also reconsider both Plaintiff's subjective symptom testimony and the lay testimony as needed. The Court also notes that the ALJ appears to have misunderstood the reports of Plaintiff and her daughter in regard to instructions, construing them as reflecting Plaintiff's difficulty *reading* written instructions "'step by step' (which is how anybody reads written instructions)", AR 61-62, rather than reflecting her difficulty *following* instructions. *See* AR 275 (stating Plaintiff did not follow written instructions well and "does better if someone tells her or reads it to her"), AR 402 (stating that she followed written instructions better than verbal but had "to read each step at each step"), and 406 ("I have trouble remembering or understanding the instructions if they are verbal or I will have to re-read if in writing sometimes several times."). The ALJ is thus advised to reconsider any reasoning offered with respect to this portion of the symptom and lay testimony.

### D. RFC/Steps Four and Five

Plaintiff argues that the above-described errors implicate the ALJ's RFC assessment and findings at steps four and five. She also asserts the invalidity of the past relevant work finding because she last worked as a housekeeping cleaner in 2014, *see* AR 379, and, under a revised

regulation, "past relevant work" is defined as work performed within five years of the ALJ's decision. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a) (2024). She additionally asserts, with no further discussion, that three of the six jobs identified at step five do not exist in significant numbers in the national economy.

The Commissioner refutes the alleged errors. The Commissioner contends, for example, that the revised regulation on past relevant work does not apply to final decisions issued prior to the regulation's effective date. *Dial v. O'Malley*, No. 23-3423, 2024 U.S. App. LEXIS 25654, at *3 (9th Cir. Oct. 11, 2024) (declining to apply new rule reducing past relevant work period because the "Commissioner has stated that the new rule does not apply to agency decisions that became final before the rule took effect") (citing Social Securing Ruling (SSR) 24-2p at n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")). *Accord McClune v. Dudek*, No. 24-2911, 2025 WL 1099701 at *2 (9th Cir. Apr. 14, 2025). Plaintiff rejects this contention. *See* Dkt. 20 at 9-10.

The Court finds no need to resolve the various disputes raised as to errors in the ALJ's RFC assessment and findings at steps four and five. The Court instead finds that, following further consideration of the medical opinion and other evidence of record, the ALJ should reconsider Plaintiff's RFC and the findings at steps four and five as needed. The Court also notes that, pursuant to SSR 24-2p, the new regulation regarding past relevant work will be applicable on remand. SSR 24-2p at n.1 ("If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of [SSR 24-2p], we will apply [SSR 24-2p] to the entire period at issue in the decision we make after the court's remand.").

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reconsider the medical opinion evidence, Plaintiff's testimony, the lay testimony, Plaintiff's RFC, and steps four and five.

Dated this 2nd day of June, 2025.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 19